**TO BE PUBLISHED IN F. SUPP.2D**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:17-cv-07 (WOB-CJS)**

**EAT MORE WINGS, LLC, ET AL**                               **PLAINTIFFS**

**VS.**                              **OPINION**

**HOME MARKET FOODS, INC.**                               **DEFENDANT**

**INTRODUCTION**

This matter came before the Court on the motion of the defendant Home Market Foods, Inc. ("HMF") to dismiss for lack of personal jurisdiction. (Doc. 13). Following a period of jurisdictional discovery, oral argument was held on August 29, 2017. Following argument, the Court announced its decision to deny the motion to dismiss, stating that it would file a written opinion setting forth its rationale for concluding that personal jurisdiction existed. (Doc. 51).

Having studied this matter further, the Court now issues the following opinion.

**FACTS**

The basic jurisdictional facts are, for the most part, not disputed, although the conclusions to be drawn therefrom are hotly contested.

According to the pleadings and his declaration, the plaintiff Timothy Tierney, acting individually and through his wholly owned company, Eat More Wings, LLC[1], developed formulae for a unique dry rub and a liquid spice for chicken wings, which he desired to market. (Tierney Decl. ¶ 2). (Doc. 21). At that time, Tierney was a Kentucky citizen.

In 2013, Tierney's nephew put him in touch with a representative of The Kroger Company to discuss the possibility of Kroger selling chicken wings containing Tierney's spices. (Tierney Decl. ¶ 3). After sampling Tierney's spices, Kroger expressed interest in purchasing Tierney's products.

In June 2015, Tierney began working with HMF's research and development team to commercially produce chicken wings containing his spices for sale at Kroger and other retailers. (Tierney Decl. ¶ 7).[2]

A course of negotiations and discussions of possible cooperation among these parties ensued. Many emails and phone conversations were exchanged. During some of these exchanges, Tierney was in Florida, where he had a residence and where he was considering moving.

---

[1] Tierney did not actually incorporate Eat More Wings as a Kentucky limited liability company until June 22, 2015.

[2] HMF is a Delaware corporation with its principal place of business in Massachusetts. It manufactures frozen foods and sells them to grocery store chains, including Kroger.

In January 2016, Tierney did move to Florida while also maintaining a home in Northern Kentucky. He resided in both places, but at some point in early to mid-2016, he established citizenship in Florida for both himself and his LLC.

On February 22, 2016, Tierney sent HMF a draft licensing agreement listing his Kentucky address and including a Kentucky choice of law provision. (Tierney Decl. ¶ 18, Exh. C). The parties continued to negotiate and, on March 29, 2016, HMF sent Tierney a revised agreement identifying Eat More Wings as a Kentucky LLC and listing Tierney's Kentucky address under the signature line, but employing a Massachusetts choice of law provision. (Tierney Decl. ¶ 23, Exh. F). That same day, Tierney established the LLC as a Florida entity. (Tierney Decl. ¶ 24).

Ultimately, HMF discontinued negotiations and commenced marketing chicken wings — made with the spices allegedly stolen from Tierney — through grocery stores, including Kroger. (Complaint ¶ 42) (Doc. 1-1 at 12).

Tierney's declaration sets out a series of emails with HMF beginning in March, 2015 and extending to February, 2016. Several drafts of a marketing agreement were exchanged. During this exchange of emails Tierney was sometimes in Kentucky and sometimes in Florida.

The Court considers the following transactions to be sufficient to establish personal jurisdiction over HMF in

3

Kentucky, although it seems that some of the emails were sent to and returned from Florida:

- On June 23, 2015, HMF Research and Development Supervisor Srividya Sreeram ("Vidya") emailed Tierney: "The 10lbs of Chicken Wing Seasoning 107195 was delivered this afternoon. Thank you. Please send us the processing details at the earliest – we have the raw materials in house to start working on this." (Doc. 21 at 15).

- On June 24, 2015, Vidya emailed Tierney: "I also wanted to ask you if you'll send any maple sriracha flavoring for us to work with? (Doc. 21 at 14).

- On July 2, 2015, Vidya emailed Tierney: "Could you please send us another 10 lbs. of the seasoning, with a 50% reduction in salt? Also could you please let me know when you'll be sending us the sriracha/maple glaze?" (Doc. 21 at 13).

- On July 2, 2015, Tierney replied: "*I am back in Kentucky* and have got all the ingredients . . . . I just need to mix and find a proper container to send to you. I promise to do it this weekend." (emphasis added). In the same email Tierney asked why HMF wanted a 50% reduction in salt. (*Id.*).

- On July 2, 2015, Vidya replied, explaining why the reduction in salt was requested. (*Id.*).

- On July 8, 2015, Tierney emailed Vidya from Kentucky to tell him that Tierney was sending him a container of the sriracha/maple glaze. (Doc. 21 ¶ 12).

- On July 8, 2015, Vidya replied to Tierney, thanking him, and saying: "Could you please send me the finished products, both original and sriracha maple? This would help us with the size of the wings, as well as the flavors." (*Id.*).

Tierney's declaration states that negotiations continued but HMF unilaterally broke them off and then appropriated his formulae,

4

independently marketing substantial quantities of chicken wings using his purloined secret recipes as early as May 2016. (Tierney Decl. ¶ 29). Defendant admits that it widely distributes the chicken wing products in question through Kroger stores in Kentucky.

**ANALYSIS**

**A. <u>Personal Jurisdiction Analysis in Kentucky</u>**

In 1962, the Commissioners on Uniform Laws promulgated the Uniform Interstate and International Procedure Act, addressing the recommended approach to determining personal jurisdiction over foreign defendants. *See* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1068 (4th ed. 2013). This Act became a model for states in developing their long-arm statutes. Kentucky's version is found in KRS 454.210.

As pertinent here, that statute reads:

(2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:

    1. Transacting any business in this Commonwealth;

    * * * *

    3. Causing tortious injury by an act or omission in this Commonwealth;

    4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, *or engages in any other persistent course of conduct*, *or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that*

5

> the tortious injury occurring in this Commonwealth *arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within this Commonwealth.*

KRS 454.210 (emphasis added).

Following the widespread adoption of this uniform statute, many states took the view that the statute was coterminous with due process; that is, that the wording of the statute did not need to be construed. Rather, only a due process analysis was required. *See* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069 (4th ed. 2013) (listing jurisdictions using this "one step inquiry"). Kentucky was among this group. *See, e.g., Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002) (personal jurisdiction analysis turns on single inquiry of whether jurisdiction offends due process), *overruled by Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011).

However, in *Caesars*, the Supreme Court of Kentucky changed this approach. There, the plaintiff was a Kentucky citizen who was a patron at a casino located in Indiana. *Caesars*, 336 S.W.3d at 53. She slipped on butter on the floor at the casino buffet and was injured. She then brought suit for her injury in state court in Kentucky, basing personal jurisdiction on widespread advertising the casino did in Kentucky to attract customers, as well as on other activities in which the casino engaged in Kentucky.

The Supreme Court of Kentucky held that the long-arm statute could no longer be construed as being coterminous with due process. *Id.* at 55-57. Rather, the conditions set forth in the statute had to be met before due process could be considered. *Id.* at 57 (court must first determine "if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories;" if not, then "*in personam* jurisdiction may not be exercised").

### B. The Kentucky Long-Arm Statute Provides for Personal Jurisdiction in this Case.

#### a. Transacting Any Business

Under the "transacting any business" prong of the Kentucky long arm statute, the "use of the word 'any' . . . establishes that *even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction.*" *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014) (emphasis added).[3] Making phone calls, sending facsimiles, sending e-mails, letters or other communications, standing alone, "may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Rice v. Karsch*, 143 F. App'x 454, 460 (6th Cir. 2005) (quoting *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001)).

---

[3] In *Beydoun*, the Sixth Circuit was construing the Michigan long arm statute, which has the same "transacting any business" prong as the Kentucky statute.

7

As stated above, the defendant sent emails to Tierney, knowing that he was in Kentucky, asking him to send samples and instructions for his products, which Tierney fulfilled from Kentucky. This constituted transacting business in Kentucky and the plaintiff's claims arise from these actions.

### b. Causing Tortious Injury in this Commonwealth

There is a second ground for satisfying the Kentucky long-arm statute in this case. Under § 454.210(2)(a)(4), personal jurisdiction is proper if a defendant has:

> Caus[ed] tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, **provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth.**

KY. REV. STAT. § 454.210(2)(a)(4) (emphasis added).

To be subject to personal jurisdiction under § 454.210(2)(a)(4), a defendant must (1) have caused a tortious injury in Kentucky, that (2) arises out of defendants' activities in conducting business, soliciting business, or deriving substantial revenue from business in Kentucky, (3) provided the conducting, soliciting, or deriving substantial revenue set out in subsection (2) is persistent. *See Fin. Ventures v. King*, 131 F. Supp. 3d 677, 685–86 (W.D. Ky. 2015).

The context of the communications between defendant and plaintiff makes clear that there was an understanding that, if defendant used plaintiff's spice or sauce, it would pay for it. Of course, the defendant may assert that it did not use plaintiff's formulae, but developed its own seasonings independently. If so, this defense can be raised at a later date.

But at this time, it is clear that this subdivision of the statute provides for personal jurisdiction over the defendant. By allegedly stealing the recipe of a Kentucky resident and deriving benefit from that recipe, HMF thus caused some harm to a Kentucky resident with its sales of chicken wings to Kroger in early 2016, regardless of where those wings ended up or where the transaction took place. *See Fin. Ventures*, 131 F. Supp. 3d at 685 (holding that a tortious injury occurred in Kentucky because plaintiff resided in Kentucky, in addition to having its principal place of business in Kentucky). Also, Kroger sent 14,663 packages of HMF chicken wings to its Kentucky-related distribution centers over an 18-month period between January 2016 and June 2017.

Kroger's purchase of those packages generated nearly $200,000 in revenue for HMF. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, (Fed. Cir. 1994) (applying similar portion of Virginia long arm statute and holding that sales made in forum state through distributors constituted "substantial revenue" attributable to defendant manufacturer); *Bay Tobacco, LLC v. Bell*

9

*Quality Tobacco Products, LLC*, 261 F. Supp.2d 483, (E.D. Va. 2003) (defendant cigarette manufacturer derived substantial revenue from sales of its cigarettes in Virginia made through distributors).

Thus, the Court concludes that HMF is subject to personal jurisdiction under this prong of the Kentucky long arm statute as well.

### c. Due Process

As explained above, resolving an issue of personal jurisdiction in Kentucky now involves an analysis of both the Commonwealth's long-arm statute and of due process.

The landmark due process case has been, and remains, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985). That opinion sets forth many precedents and a lengthy discussion of due process principles in the long-arm context. The essential holding of the case, however, was succinctly stated:

> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, [jurisdiction exists] if the defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to those activities."

*Id.* at 472 (internal quotations omitted). In support of this holding the Court cited *Keeton v. Hustler Magazine,* 465 U.S. 770, 774 (1984) (personal jurisdiction in a libel suit lies where an offending publication was distributed in the forum state). *Accord*

*Calder v. Jones,* 465 U.S. 783 (1985). *Cf. Daimler AG v. Bauman,* 134 S. Ct. 746, 755 n.7 (2014) (citing cases).

The Court further observed that "[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State," or where the defendant "has created 'continuing obligations' between himself and residents of the forum." *Rudzewicz*, 471 U.S. at 475-76 (citations omitted).

The facts in this case satisfy these criteria. Defendant, knowing that Tierney was in Kentucky, at least twice requested that he prepare and ship to defendant's out-of-state headquarters recipes for Tierney's sauce and spice for chicken wings. This was followed by a lengthy series of negotiations which ended when the defendant allegedly stole the recipes and used them in their products. Thus, the defendant itself "created a substantial connection with the forum State." *Id.* Defendant subsequently marketed the allegedly fraudulently obtained recipes in the forum state, through retailers, including Kroger.

As the *Rudzewicz* Court observed:

> [T]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State and those products subsequently injure forum consumers.

*Id.* at 473 (citation and internal quotations omitted).

Although consumers here were not injured, if plaintiff's allegations are true, every sale of defendant's product in Kentucky (as well as other states) causes injury to plaintiff and his LLC.

The Sixth Circuit has consistently applied these principles over the years in many cases, as early as *Southern Machine Co. v. Mohasco Ind., Inc.*, 401 F.2d 374 (6th Cir. 1968). *See also Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505-08 (6th Cir. 2014) (discussing *Mohasco* and other cases).

In a slightly different context, the Supreme Court has reiterated that a company that places products in the stream of commerce can be sued on claims arising out of sales of the products in every state where the defendant reasonably anticipates they will be distributed. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980).

As stated in *Mohasco*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Mohasco*, 401 F.2d at 381.

In the Sixth Circuit, the emphasis on the purposeful availment inquiry is "whether the defendant has engaged in some overt actions

connecting the defendant with the forum state." *Beydoun*, 768 F.3d at 506 (citation and internal quotation omitted).

In sum, the Court holds that the above quoted requests by the defendant to Tierney asking him to send samples of his sauce and spices, which defendant then allegedly stole and from which it is now deriving substantial revenue from Kentucky customers, satisfy the above jurisdictional criteria.[4]

This 10th day of October, 2017.

Signed By:
*William O. Bertelsman* WOB
United States District Judge

---

[4] It should be noted that this is not a products liability "stream of commerce" case. Rather, the Court relies on the defendant's purposely acting in Kentucky and causing a result there by its requests knowingly directed into Kentucky for samples of plaintiffs' products.